IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TOWANDA BARBER, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. JFM 02 CV-341 |
| DAVCO RESTAURANTS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER
OF LAW ON PLAINTIFFS' RACIAL HARASSMENT CLAIMS**

Defendants, DavCo Restaurants, Inc. and FriendCo Restaurants, Inc. (hereinafter, "Friendly's"), hereby move, pursuant to Federal Rule of Civil Procedure 50(a), for a judgment as a matter of law in their favor on Plaintiffs' racial harassment claims.

The standard for granting a motion for judgment as a matter of law 1/ requires that the Court view the evidence in the light most favorable to the non-moving party and draw every legitimate inference in favor of that party. Judgment as a matter of law is warranted "[w]hen the evidence is such that without weighing the credibility of witnesses there can be but one reasonable conclusion as to the

---

1/   Prior to the 1991 amendments to the Federal Rules of Civil Procedure, Motions for judgment as a matter of law were referred to as motions for directed verdict. See 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2521 n.6 (2d ed. 1994).

verdict." Brady v. S. Ry. Co., 320 U.S. 476, 479 (1943); see also Hofherr v. Dart Indus., Inc., 853 F.2d 259, 261-62 (4th Cir. 1988) (affirming grant of directed verdict).

Plaintiffs in this case failed to proffer sufficient evidence to justify any reasonable conclusion other than a judgment in favor of Friendly's on their racial harassment claims. Thus Friendly's motion for judgment as a matter of law on the racial harassment claim should be granted as to each Plaintiff.

## ANALYSIS

Plaintiffs have failed to adduce sufficient evidence to reach the jury on their racial harassment theory. Under such a theory, Plaintiffs must show that defendants' conduct permeated the workplace with "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Nat'l R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2074 (2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

As the Supreme Court recently explained, harassment claims are different from allegations of discrete acts. "Their very nature involves repeated conduct." Nat'l R.R., 122 S. Ct. at 2073. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Nat'l Railroad, 122 S. Ct. at 2073.

Plaintiffs allege only that on one day, June 15, 2001, they were called "niggers." Flagrant inconsistencies permeate Plaintiffs' trial testimony on their

2

supposed recollection of the events that transpired that night.  This is a motion for judgment as a matter of law, however, and in this context the Court must reasonably credit Plaintiffs' testimony.  Nonetheless, Plaintiffs have not adduced evidence of a racially hostile work environment.  They failed to establish a prima facie case of racial harassment, and further failed to refute Friendly's legitimate defense.

A.   **Plaintiffs failed to establish a prima facie case of racial harassment.**

To state a claim for racial harassment, Plaintiffs must prove that (i) the harassment was unwelcome; (ii) the harassment was based on Plaintiffs' race; (iii) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (iv) there is some basis for imposing liability on the employer.  Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).  Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment.  See Faragher v. City of Boca Raton, 524 U.S. 775, 786-87 & n.1 (1998); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66-67 (1986); see also Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 479 n.28 (D. Md. 2002).

Plaintiffs' testimony failed to demonstrate that the alleged harassment was sufficiently severe or pervasive.  See, e.g., Oladokun v. Grafton School, Inc., 182 F. Supp. 2d 483 (D. Md. 2002).  In Oladokun, the plaintiff sued her employer for race discrimination under 42 U.S.C. § 1981 ("section 1981") and Title VII of the Civil Rights Act of 1964 ("Title VII").  The defendants moved for summary judgment

3

on the plaintiff's hostile work environment claim. The United States District Court for the District of Maryland granted the defendants' motion because the plaintiff failed to satisfy the standard for hostile work environment discrimination. Id. at 494.

In support of her hostile work environment claim, Oladokun alleged that her manager said "I will get you niggers out of here." Id. at 487. She also alleged that the same manager directed the term "nigger" at the plaintiff's African American co-worker. Id. at 493. In granting the employer's motion for summary judgment, the court held that "[e]ven if taken together, however, use of this language by the supervisor is not sufficient to satisfy the hostile work environment test because it is not sufficiently pervasive." Id. The court went on to state that "courts have upheld hostile work environment claims based on the use of similar and 'other racially abusive language' where that use, 'was repeated, continuous and prolonged despite [the plaintiff's] objections.'" Id. (quoting Walker v. Ford Motor Co., 684 F.2d 1355, 1359 (11th Cir. 1982)); see also Sonpon v. Grafton School, Inc., 181 F. Supp. 2d 494, (D. Md. 2002) (holding allegations that supervisor referred to plaintiff as "lazy African woman" and unfairly reprimanded her insufficient to establish hostile work environment).

The United States District Court for the District of Maryland also granted the defendant employer's summary judgment motion on the racial harassment claims of seven of the eight plaintiffs in Carson v. Giant Food, Inc., 187 F. Supp. 2d 462 (D. Md. 2002). The plaintiffs brought their claims under

4

section 1981 and Title VII.  The court found the record "clearly demonstrates that racial hostility existed between African-American workers and white workers at the [employer's] warehouses."  Id. at 474.  In support of this finding, the court referenced nooses on display, racist graffiti written on the walls of the employer's trucks, and evidence that managers used racist epithets and made other racially offensive remarks to their employees.  The court acknowledged that these allegations were "reprehensible."  Id.  Nonetheless, the court granted summary judgment in favor of the defendant employer with respect to seven of the eight plaintiffs' claims.

One claim that did not survive summary judgment involved allegations that the plaintiff was exposed to daily racist graffiti that included statements such as "[k]ill all niggers at Giant Foods," "[b]lack babies are crack babies," and "KKK will kill all niggers at Giant Foods."  Id. at 475.  The plaintiff also alleged that a manager called him "nigger" and followed him throughout the warehouse in a harassing manner.  Id.  The plaintiff further alleged that he overheard white co-workers use the term "nigger" approximately thirteen times over four years.  Id.  All this was not enough to convince the United States District Court for the District of Maryland that a hostile work environment existed for this plaintiff.  Id. at 478.

In comparison, the sole hostile work environment claim to survive summary judgment in the Carson case involved allegations that white co-workers threw bananas at the plaintiff and made ape noises on the warehouse microphone while the manager laughed.  Id. at 474.  The plaintiff with the surviving claim also

5

alleged that a co-worker called him "nigger" and told him that "white people could send people to the moon, but black people were only good for sticking bones through their noses." Id.  The plaintiff also alleged that the same co-worker placed dough in front of the zipper of his pants and said that he was depicting a black penis.  Id. The plaintiff further alleged that white employees posted pictures of monkeys and apes in the warehouse and wrote the plaintiff's name under one of the pictures.  Id. Additionally, the plaintiff with the surviving hostile work environment claim alleged that he received unequal discipline and was assigned to a small, undesirable locker room that was referred to as the "nigger locker room."  Id. at 475.  These incidents occurred over a long period of time.

In contrast to the surviving claim in Carson, Plaintiffs in the present case testified that offensive language was used on only one day during their employment with Friendly's. The sum total of Plaintiffs' testimony is that:

- Plaintiffs' witness Beth Easton testified that there were no allegations of race discrimination at the Hunt Valley Friendly's prior to June 15, 2001;

- Plaintiffs' witness Marcellus Bell testified that he never heard Ms. Woodward use the word "niggers" prior to June 15, 2001.  He also testified that he only heard the word "nigger" used one time that day; and

- Plaintiffs Roberson, Gaston, and Powell all agree that they did not hear that word prior to June 15, 2001 and heard it only a few times that day.

Plaintiffs' allegations do not amount to the repeated conduct required for a viable harassment claim.

6

Like the plaintiffs in Oladokun, Sonpon, and seven of the plaintiffs in Carson, the present Plaintiffs' allegations are neither pervasive enough nor severe enough to constitute a hostile work environment. Because Plaintiffs failed to adduce evidence of a hostile work environment, their racial harassment claims fail as a matter of law.

**B.    Plaintiffs failed to refute Friendly's legitimate defense to a hostile work environment claim.**

In addition to failing to adduce a prima facie case of racial harassment, Plaintiffs further failed to demonstrate that there is any basis for imposing liability on Friendly's. See, e.g., Carson, 187 F. Supp. 2d 462. In Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-65 (1998), the Supreme Court established a defense whereby an employer can avoid liability for a supervisor's sexual harassment of an employee. The United States Court of Appeals for the Fourth Circuit has applied the Faragher and Ellerth holdings to other types of harassment claims, including claims of racial harassment. See Carson, 187 F. Supp. 2d at 479 n.28.

Under the now-familiar Faragher and Ellerth test, the employer must establish by a preponderance of the evidence that (i) an employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (ii) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Carson, 287 F. Supp. 2d at 479 (quoting Faragher, 524 U.S. at 805).

1.  <u>Friendly's exercised reasonable care to prevent racial harassment</u>.

The United States District Court for the District of Maryland stated in <u>Carson</u> that where the employer maintained and distributed an anti-harassment policy that called for prompt reporting of harassment, the first element of the <u>Faragher</u> and <u>Ellerth</u> test is satisfied. <u>Carson</u>, <u>id.</u> at 479. There is uncontested evidence that Friendly's maintained and distributed an anti-harassment policy. <u>See</u> Transcript of March 5, 2003 trial testimony of Stacey Jackson; <u>see</u> also FriendCo Handbook, Defendants' Trial Exhibit 2, attached as Exhibit 1.

The court in <u>Carson</u> held that "[d]istribution of an anti-harassment policy provides 'compelling proof' that the company exercised reasonable care in preventing and promptly correcting harassment. <u>Carson</u>, 187 F. Supp. 2d at 479 <u>quoting</u> <u>Barrett v. Applied Radiant Energy Corp.</u>, 240 F.3d 262, 266 (4th Cir. 2001). Like the <u>Carson</u> policy, Martha Woodward testified that the Friendly's policy was set forth in the employee handbook and was displayed in the employee area of the Hunt Valley restaurant. <u>See</u> Transcript of March 5, 2003 trial testimony of Martha Woodward. Employees knew whom to call if they had a complaint.

Also like the <u>Carson</u> anti-harassment policy, the FriendCo policy states that incidents of harassment should be reported immediately. FriendCo maintains that Plaintiffs did not complain to any supervisor about the alleged racial harassment until Towanda Barber telephoned FriendCo headquarters. Plaintiffs testified that they complained to Marcellus Bell, and they testified that Bell was a supervisor. First, Plaintiffs' testimony that Bell was a supervisor is refuted by the

8

testimony of Plaintiffs' witness Lucy Citro. Citro testified that the only supervisors at the Hunt Valley Friendly's were Martha Woodward, Renee Callaghen, Becky Owens, and Naressa. Plaintiffs testified that they never complained to these supervisors. Second, and more importantly, even if Plaintiffs' testimony that Bell was a supervisor is credited, that complaint was made on the one and only day the alleged harassment was experienced – Friday night, June 15. By the following Tuesday, Friendly's had already initiated an investigation into the complaint. Thus Friendly's exercised reasonable care and the first element of the test is satisfied.

    2.    <u>Plaintiffs quit before bothering to take advantage of corrective opportunities</u>.

Plaintiffs Roberson, Gaston, and Powell all testified that there was no racially hostile work environment prior to June 15, 2001. June 15, 2001 was a Friday night. The alleged incident of harassment occurred during the restaurant closing on that Friday night. Towanda Barber testified that she complained to Friendly's about Plaintiffs' allegations on that night or the next day. Stacey Jackson testified that she first learned of Barber's complaint on the following Monday and that FriendCo promptly began interviewing witnesses at the Hunt Valley restaurant the next day – the Tuesday following the Friday incident.

Even if Plaintiffs' allegations are true, Plaintiffs never gave FriendCo the opportunity to correct any inappropriate behavior. FriendCo manager Martha Woodward testified that she fired Plaintiff Aundere Gaston because he threatened her, but that his friends Antwan Roberson and Devin Powell quit their job. If Woodward's testimony is credited, Plaintiffs Roberson and Powell quit before

9

making any complaint. Plaintiffs dispute this testimony and claim they all were terminated. Crediting Plaintiffs' testimony, however, does not prevent FriendCo from satisfying the second element of the Faragher and Ellerth test. Towanda Barber testified that when she made her complaint to Stacey Jackson, Jackson promptly offered Plaintiffs Roberson and Powell a job with FriendCo. Plaintiffs' response, communicated by Barber and recorded contemporaneously by Barber in her diary, was a sarcastic "yeah right."

Friendly's satisfies the second element because upon complaint it immediately initiated a fair and thorough investigation. Further, even if Plaintiffs' testimony that they were terminated on June 15, 2001 is credited, they also testified that they were offered re-employment as soon as they made their complaint. They refused that offer. Thus, Plaintiffs' testimony is that the offensive language was used on one day, and that they refused to return to work after that one alleged incident. Friendly's did everything in its power to investigate the veracity of Plaintiffs' allegations, and Friendly's demonstrated that it intended to correct any problem the investigation uncovered. Thus the second element of the Faragher and Ellerth test is also satisfied, and Plaintiffs have failed to refute Friendly's legitimate defense.

## CONCLUSION

By alleging only one incident of harassment, Plaintiffs failed to adduce a prima facie hostile work environment claim. Further, because Friendly's maintained an anti-harassment policy and because Friendly's immediately initiated

10

an investigation, Plaintiffs failed to refute Friendly's legitimate defense to a racial harassment claim. Thus, for the aforementioned reasons, Friendly's respectfully requests that this Court grant this Motion to Dismiss.

                                      Respectfully submitted,

                                      /s/
                            Gil A. Abramson (#01240)
                            Meredith S. Abrams (#26761)
                            Hogan & Hartson L.L.P.
                            111 S. Calvert St., Suite 1600
                            Baltimore, Maryland  21202
                            Telephone:  (410) 659-2700
                            Facsimile:  (410) 539-6981

                            Counsel for Defendants
                            DavCo Restaurants, Inc. and
                            FriendCo Restaurants, Inc.

Dated:  March 5, 2003